842 So.2d 797 (2003)
Jeno F. PAULUCCI, et al., Petitioners,
v.
GENERAL DYNAMICS CORPORATION, et al., Respondents.
No. SC01-2346.
Supreme Court of Florida.
March 20, 2003.
*798 David H. Simmons, Dale T. Gobel and Daniel J. O'Malley of Drage, deBeaubien, Knight, Simmons, Mantzaris & Neal, Orlando, FL, for Petitioners.
Steven L. Brannock, Rory C. Ryan and Stacy D. Blank of Holland & Knight LLP, Tampa, FL, for Respondents.
PARIENTE, J.
We have for review the decision of the Fifth District Court of Appeal in General Dynamics Corp. v. Paulucci, 797 So.2d 18 (Fla. 5th DCA 2001), which certified a question of great public importance and also certified conflict with the decision of the Third District Court of Appeal in Buckley Towers Condominium, Inc. v. Buchwald, 321 So.2d 628 (Fla. 3d DCA 1975).[1] We have jurisdiction, see art. V, *799 § 3(b)(4), Fla. Const., and rephrase the certified question as follows:
DOES A COURT HAVE JURISDICTION TO ENFORCE A SETTLEMENT AGREEMENT WHERE THE COURT HAS EITHER INCORPORATED THE SETTLEMENT AGREEMENT INTO A FINAL JUDGMENT OR APPROVED THE SETTLEMENT AGREEMENT BY ORDER AND RETAINED JURISDICTION TO ENFORCE ITS TERMS?[2]
For the reasons that follow, we answer the rephrased question in the affirmative and hold that regardless of whether the remedy sought is outside the scope of the original pleadings, a court has jurisdiction to enforce a settlement agreement where the court has either incorporated the agreement into a final judgment or approved the agreement by order and retained jurisdiction to enforce it terms.

FACTS
In 1996, the Pauluccis filed a complaint alleging that General Dynamics Corporation or other named corporations or limited partnerships associated with it (hereinafter "GDC") had contaminated the Pauluccis' warehouse property when GDC leased it from the Pauluccis. On July 24, 1998, the parties entered into a settlement agreement that required GDC pay the Pauluccis a total of $3,000,000. The settlement agreement also required GDC to
promptly initiate contact with the DEP [Department of Environmental Protection] concerning the Environmental Condition of the property to maintain the NFA [No Further Action Letter] or to obtain reissuance of the NFA, and if required by the DEP for such purposes, [to] investigate and implement clean up, remediation, and monitoring activities.
The parties also agreed that
[i]f after 15 months from the date of this Settlement Agreement, there is no valid No Further Action (NFA) letter in place with regard to the property in question, then Plaintiffs shall be entitled to and Defendants shall pay to Plaintiffs, monthly payments (paid on the first of each month) equal to the difference between the fair market value of the lease rate of the property and any current monthly rental for each month following the 15 month period until a valid NFA letter is issued.
The Pauluccis and GDC requested that the trial court approve the settlement agreement and incorporate it into the final judgment. The trial court approved the agreement and incorporated it into a final judgment issued July 29, 1998, in which the court retained "jurisdiction of this matter in order to enforce, construe, interpret, and otherwise insure compliance by the Parties with the Settlement Agreement."
Subsequent to the final judgment, various motions were filed in the trial court by the Pauluccis alleging noncompliance by GDC with the terms of the settlement agreement. The trial court entered an order that stated in part:

*800 The Settlement Agreement in the present case contemplated further enforcement litigation. It settled all matters between the parties except for obligations set forth in the Settlement Agreement. It provided for the trial court to approve the Settlement Agreement, incorporate it into the Final Judgment, and for the court to retain jurisdiction to enforce the Settlement Agreement. The Settlement Agreement even provided for limited confidentiality in case the Agreement needed to be enforced. Further, the parties specified the calculation of damages should the Defendants fail to timely satisfy their obligations under the Settlement Agreement.... Finally, the Settlement Agreement gave the Defendants full, complete and uninterrupted control over the Environmental Condition of the property for 15 months from the date of the Settlement Agreement, July 24, 1998. However, the Settlement Agreement did not provide for a jury trial or for punitive damages. The court is not free to vary these terms.
While the Plaintiffs may file a motion in this court to enforce the Settlement Agreement, they may not file an action for its breach or for a statutory violation of Chapter 376, Florida Statutes; that must be done in a separate action. Further, an action to enforce the Settlement Agreement did not become ripe until 15 months after the effective date of the Settlement Agreement which was October 24, 1999.
(Citations omitted.)
On appeal, the Fifth District observed that the trial court's solution to the jurisdictional issue was "reasonable." However, the Fifth District concluded that its prior decision in Wallace v. Townsell, 471 So.2d 662 (Fla. 5th DCA 1985), required that any action seeking to enforce a settlement agreement "be brought in a separate action, by complaint and not motion, giving the defendant the opportunity to plead ... defenses and request a jury trial if appropriate." Paulucci, 797 So.2d at 21. Thus, the Fifth District reversed the trial court's order, holding that the trial court had no "subject matter jurisdiction" to enforce the terms of the settlement agreement because the remedy sought was outside the scope of the original pollution action. See id. at 20-21. Nevertheless, the Fifth District expressed reservations about the wisdom of its decision:
A complaint is, of course, essential to initiate an action. But its purpose is to invoke the subject matter jurisdiction of the court and to give notice of the claim. Has not that purpose been met when the parties stipulate in their settlement agreement resolving an action for which the court already has jurisdiction that based on a certain event occurring, or based on failure of a certain event to timely occur, stipulated consequences will flow and also agree that the court approving the settlement is authorized to determine whether such event did or did not occur and whether such consequences should or should not be suffered? Can it not be said that the settlement agreement approved by the court and adopted as part of the final judgment together with the agreement of the parties that the court can enforce that agreement, in effect, "amended" the initial pleadings and waived any claim for a jury trial?
Id. at 21. Accordingly, the Fifth District certified a question of great public importance to this Court and certified conflict with the Third District's decision in Buckley Towers.

ANALYSIS
Seventy years ago this Court recognized that "[w]hen a judgment or decree *801 has once been rendered, the court loses jurisdiction over the subject-matter of the suit, other than to see that proper entry of judgment or decree is made and that the rights determined and fixed by it are properly enforced." Davidson v. Stringer, 109 Fla. 238, 147 So. 228, 229 (1933) (emphasis supplied). More recently, we have reaffirmed that "a trial judge has the inherent power to do those things necessary to enforce its orders." Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co., 639 So.2d 606, 608-09 (Fla.1994).
The issue before us in Paulucci concerns the jurisdiction of the trial court to enforce a settlement agreement that has been specifically approved by the trial court and incorporated in the final judgment.[3] In the certified conflict case, Buckley Towers, the trial court approved the settlement agreement in an order that expressly provided:
The above styled consolidated cases are dismissed with prejudice. The Court retains jurisdiction of this consolidated litigation solely for the purpose of enforcing the terms, provisions and conditions of said Agreement, and for the entry of such orders as may be necessary or reasonably required in connection with the performance of said Agreement.
321 So.2d at 628-29. The Third District rejected the appellant's contention that the trial court was without jurisdiction to enforce the terms of the settlement agreement, noting that "[t]here are numerous case law holdings that even without an express reservation thereof, jurisdiction inherently remains in the trial court to make such orders as may be necessary to enforce its judgment." Id. at 629.
In Kinser v. Crum, 823 So.2d 826, 827 (Fla. 1st DCA 2002), the First District cited the Third District's decision in Buckley Towers with approval and held that the trial court had jurisdiction to enforce a settlement agreement entered into by the parties. As in Buckley Towers, the trial court in Kinser reviewed the settlement agreement and expressly retained jurisdiction to enforce its terms in the order of dismissal. The pertinent facts in Kinser were set forth by the First District as follows:
The terms of the settlement agreement provided that Appellees would have the right to market and sell certain property for a period of one year, and included the following language: "Plaintiffs [Appellees] shall dismiss this case with prejudice subject only to reserving the right to enforce this agreement." Before dismissing the suit, Appellees filed a motion to enforce the settlement agreement. Appellants argued that the trial court did not have jurisdiction to enforce the contract and that, instead, Appellees should file a separate suit to allege a breach of the settlement agreement. Appellants filed a motion requesting the *802 trial court dismiss the case with prejudice, as required by the settlement agreement. On October 14, 1998, the trial court entered an order of dismissal, stating:
1. The court has reviewed the settlement agreement entered into by the parties, which has been filed with the court.
2. The court relies on the settlement in dismissing this action.
The trial court adjudged the action dismissed with prejudice, except "[t]his court specifically retains continuing jurisdiction to enforce the terms of the settlement agreement." The trial court entered Final Judgment against Appellants, and awarded damages to Appellees pursuant to a mathematical calculation contained in the settlement agreement.
Id. at 827 (emphasis supplied) (alterations in the original).
In MCR Funding v. CMG Funding Corp., 771 So.2d 32 (Fla. 4th DCA 2000), the Fourth District explained the difference between cases such as Paulucci, Buckley Towers, and Kinser, where parties present their settlement agreement to the trial court for approval prior to final judgment or dismissal of the action, and cases where the parties voluntarily dismiss the action without an order of the court as provided for in Florida Rule of Civil Procedure 1.420:[4]
Once parties to a lawsuit have reached settlement, the common resolution is an agreement by the plaintiff to dismiss the pending lawsuit in exchange for other mutual agreements between the parties. Sometimes these other agreements may take some time to complete, and are not contemplated to be completed prior to the plaintiff's dismissal of the lawsuit. If there is a breach of the settlement agreement by any one of the parties, there may yet be a need for judicial involvement in the dispute. If the litigants have presented their settlement to the judge, who in turn incorporated or relied upon that settlement agreement and entered an order of dismissal predicated on the parties' settlement agreement, the litigants may later file a motion in the dismissed case seeking enforcement of the settlement agreement....
On some occasions ... settlement is reached, and dismissal is later achieved by the parties without an order of court pursuant to Florida Rule of Civil Procedure 1.420. When this is the route taken and the parties have neither presented the settlement agreement to the judge nor obtained an order of dismissal predicated upon the same, a party will not be able to obtain enforcement of the settlement agreement by simply filing a motion in the now-dismissed case if one of the other parties to the agreement objects. By voluntarily dismissing their suit, the litigants have removed their *803 dispute from the judge's consideration.... In this instance, the parties would ordinarily have to pursue a new breach of contract action to enforce the settlement agreement.
MCR Funding, 771 So.2d at 34-35 (footnote and citation omitted).
We agree with this distinction and, consistent with the principles expressed in Davidson and Levin, Middlebrooks, hold that when a court incorporates a settlement agreement into a final judgment or approves a settlement agreement by order and retains jurisdiction to enforce its terms, the court has the jurisdiction to enforce the terms of the settlement agreement even if the terms are outside the scope of the remedy sought in the original pleadings.[5] However, the extent of the court's continuing jurisdiction to enforce the terms of the settlement agreement is circumscribed by the terms of that agreement. Thus, if a party is claiming a breach of the agreement and is seeking general damages not specified in the agreement, the appropriate action would be to file a separate lawsuit.
We further approve of the distinction between the enforcement of the terms of the agreement and a general claim for breach of the agreement set forth by the Fifth District in its decision below:
By enforcing a contract, it is assumed that the contract has continuing validity and a party is ordered to comply with its terms. A breach of contract action presupposes that the contractual relationship is at an end because of a material breach by one party and damages are sought by the non-breaching party as a substitute for performance.
Paulucci, 797 So.2d at 20.
Applying these legal principles to this case, "the court approving the agreement had the authority to enforce GDC's obligation to pay the stipulated rental if it determined that a valid NFA letter was not in place fifteen months after the date of the agreement but that any action for damages under the general breach provision (as opposed to enforcement of a duty accepted in the contract) would have to be instituted as a separate action." Id. Accordingly, we answer the rephrased question in the affirmative and approve the Third District's decision in Buckley Towers and the First District's decision in Kinser. We disapprove the Fifth District's decision in Wallace and quash the Fifth District's decision in Paulucci to the extent that both decisions are inconsistent with this opinion. We remand this case to the Fifth District for further consideration.[6]
It is so ordered.
*804 ANSTEAD, C.J., WELLS, LEWIS, QUINCE and CANTERO, JJ., and SHAW, Senior Justice, concur.
NOTES
[1] Subsequently, the First District in Kinser v. Crum, 823 So.2d 826 (Fla. 1st DCA 2002), certified conflict with Paulucci. In Kinser, the First District found "an irreconcilable difference between Buckley Towers" and the opinions of the Fifth District in Wallace v. Townsell, 471 So.2d 662 (Fla. 5th DCA 1985), George Vining & Sons, Inc. v. Jones, 498 So.2d 695 (Fla. 5th DCA 1986), and Paulucci. See Kinser, 823 So.2d at 827.
[2] The question as certified by the Fifth District states:

DOES A COURT WHICH APPROVES A SETTLEMENT AGREEMENT RETAIN JURISDICTION TO ENFORCE THE TERMS THEREOF EVEN IF THE REMEDY SOUGHT IS OUTSIDE THE SCOPE OF THE ORIGINAL PLEADINGS?
Paulucci, 797 So.2d at 21. Although both parties agree that the certified question should be answered in the affirmative, we denied the respondents' motion to dismiss in order to address the Fifth District's certified question and resolve the certified conflict.
[3] Jurisdiction is a broad term that includes several concepts, each with its own legal significance. In Paulucci, the Fifth District characterized the issue before it as one of the trial court's "subject matter jurisdiction." See 797 So.2d at 21. We conclude that framing the issue as one of subject matter jurisdiction is inaccurate. Subject matter jurisdiction "means no more than the power lawfully existing to hear and determine a cause." Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179, 181 (Fla.1994) (quoting Malone v. Meres, 91 Fla. 709, 109 So. 677, 683 (1926)). It "concerns the power of the trial court to deal with a class of cases to which a particular case belongs." Id. Rather, the issue presented by the certified question is more aptly described as one of the trial court's "continuing jurisdiction." Cf. Finkelstein v. North Broward Hosp. Dist., 484 So.2d 1241, 1243 (Fla.1986) (finding that the trial court has continuing jurisdiction to entertain a post-judgment motion for attorney's fees).
[4] Rule 1.420 states in pertinent part:

(a) Voluntary Dismissal.
(1) By Parties. Except in actions in which property has been seized or is in the custody of the court, an action may be dismissed by plaintiff without order of court (A) before trial by serving, or during trial by stating on the record, a notice of dismissal at any time before a hearing on motion for summary judgment, or if none is served or if the motion is denied, before retirement of the jury in a case tried before a jury or before submission of a nonjury case to the court for decision, or (B) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice or stipulation, the dismissal is without prejudice.... A voluntary dismissal under rule 1.420(a) divests the trial court of continuing jurisdiction over the case. See Randle-Eastern Ambulance Serv., Inc. v. Vasta, 360 So.2d 68, 69 (Fla.1978).
[5] We limit the scope of this decision to those cases in which the trial court has either entered a final judgment incorporating the terms of the settlement agreement or approved the agreement by order and expressly retained jurisdiction to enforce its terms, because this reflects the facts presented in Paulucci, Buckley Towers, and Kinser. Further, we conclude that in cases where the approval of the settlement agreement is by order rather than by incorporating the terms into a final judgment, the statement in the order that the trial court expressly retains jurisdiction to enforce its terms makes it clear that all parties and the court contemplated an express retention of jurisdiction rather than the necessity of an independent lawsuit.
[6] Noting that the case might be remanded, the Fifth District addressed two additional issues: (1) "whether the Pauluccis proved the condition precedent justifying the award of the stipulated rental payments"; and (2) "whether the award of attorneys' fees and costs were appropriate." Paulucci, 797 So.2d at 20. We decline to address these issues, which are outside the scope of the certified question. See Gouty v. Schnepel, 795 So.2d 959, 966 n. 4 (Fla.2001); Crocker v. Pleasant, 778 So.2d 978, 989 (Fla.2001).