# Third District Court of Appeal

## State of Florida

Opinion filed August 16, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1958
Lower Tribunal No. 14-8459
_____


**Platinum Luxury Auctions, LLC,**
**Trayor Lesnock, and Kevin Vaughn,**
Appellants,

vs.

**Concierge Auctions, LLC,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Tripp Scott, P.A., and Ryan H. Lehrer and Paul O. Lopez (Fort Lauderdale), for appellants.

Carey Rodriguez Milian Gonya, LLP, and Patrick E. Gonya, Jr., for appellee.


Before LAGOA, SALTER, and FERNANDEZ, JJ.

LAGOA, J.

The appellants, Platinum Luxury Auctions, LLC ("PLA"), Trayor Lesnock ("Lesnock"), and Kevin Vaughn ("Vaughn") (collectively, the "Appellants"), appeal the trial court's order granting appellee, Concierge Auctions, LLC's ("Concierge"), motion to enforce settlement agreement. Because the trial court erred in finding that Appellants violated the Non-Disparagement provision of the parties' Confidential Settlement Agreement, we reverse.

I.    FACTUAL AND PROCEDURAL HISTORY

PLA and Concierge are acknowledged rivals in the auction business. On April 1, 2014, Concierge filed suit against PLA, Lesnock, and Vaughn alleging claims for, among other things, defamation, violation of the Florida Unfair and Deceptive Trade Practices Act, tortious interference with business relationships, and conspiracy. Concierge alleged that Lesnock, using a pseudonym, posted negative comments about Concierge in the comments section of a January 22, 2014, online magazine article about Concierge's unsuccessful auction of a home in Highland Park, Illinois. Lesnock admitted in his deposition testimony that he was the author of the negative comments, which were posted on or about January 27, 2014 (the "January 27 blog post").

On September 5, 2014, Concierge, PLA, Lesnock, and Vaughn executed a Confidential Settlement Agreement (the "Settlement Agreement"). The Settlement Agreement set forth in detail the contents of Lesnock's January 27 blog post.

2

Under the terms of the Settlement Agreement, the Appellants agreed to publish, within fifteen days from the execution of the Settlement Agreement, a retraction of the January 27 blog post. In accordance with these terms, on September 14, 2014, the Appellants published a retraction of the January 27 blog post on the relevant magazine's website.

The Settlement Agreement also contained a provision (the "Non-Disparagement Provision") in which the Appellants agreed not to make any defamatory, disparaging, or critical statements, written or verbal, about Concierge *after* execution of the Settlement Agreement. The Non-Disparagement Provision states,[1] in pertinent part:

> 3. <u>Non-Disparagement.</u>
> a. Defendants acknowledge and agree that the professional, business and personal reputations of Plaintiff and its employees, directors, and officers are important and should not be impaired by Defendants **after** this Agreement is executed. Therefore, Defendants agree not to make any statements, written or verbal, or cause or encourage others to make any statements, written or verbal, that defame, disparage or in any way criticize the personal or business reputation, practices, or conduct of Plaintiff, its employees, directors, and officers
> . . . .

(emphasis added).

---

[1] Although the trial court entered an agreed order sealing the Settlement Agreement as confidential pursuant to Florida Rule of Judicial Administration 2.420(c)(9), we quote this portion of the Non-Disparagement Provision as it is central to the issue on appeal and consists of contractual language that does not reveal confidential information.

Shortly thereafter, the Appellants and Concierge filed a joint stipulation of dismissal with prejudice. On March 30, 2016, the trial court entered an Agreed Order Approving Joint Stipulation of Dismissal with Prejudice dismissing the case with prejudice and specifically retaining jurisdiction "to enforce the terms of the confidential settlement agreement executed between the parties dated September 5, 2014."

On April 21, 2016, Concierge filed a Motion to Enforce Settlement Agreement, claiming that PLA and Lesnock were in violation of the Non-Disparagement Provision because a January 2014 online article (the "January 2014 online article") was "available online and accessible" on two websites operated and controlled by PLA and Lesnock. Concierge claimed that the January 2014 online article criticized and disparaged Concierge's involvement in the same auction at issue in the January 27 blog post. Concierge argued that the January 2014 online article "indisputably violates the Non-Disparagement Provision," and sought an order directing PLA and Lesnock to "take down" the January 2014 online article from their websites.

In their Response to the Motion to Enforce Settlement Agreement, PLA and Lesnock argued that the Non-Disparagement Provision does not require the retraction of statements made prior to the time the parties entered into the Settlement Agreement. PLA and Lesnock relied on the fact that the January 2014

4

online article was written and posted nine months before the parties executed the Settlement Agreement on September 5, 2014, and that it was not included in the terms of the Settlement Agreement.

PLA and Lesnock also asserted that Concierge knew about the January 2014 online article at the time the parties executed the Settlement Agreement, but chose to not include the article as part of the settlement terms, which only required the retraction of the January 27 blog post. PLA and Lesnock supported their Response with Lesnock's affidavit in which Lesnock attested that the January 2014 online article "was one of the topics raised by [Concierge's] counsel during my deposition in this case prior to the signing of the settlement agreement."[2] Indeed, as conceded in its Answer Brief to this Court, Concierge does not dispute that it was aware of the January 2014 online article at the time it executed the Settlement Agreement with the Appellants.

After a hearing on the matter, the trial court entered its order granting the Motion to Enforce. The trial court found that the January 2014 online article disparages Concierge and that the Appellants' refusal to remove it from their websites violates the Non-Disparagement Provision contained in the Settlement Agreement. The trial court directed the Appellants to remove the January 2014 online article from their websites within seven days of the date of the order.

---

[2] Lesnock also attested that the contents of the January 2014 online article had not been modified.

This appeal followed.

II.   STANDARD OF REVIEW

"[A] trial court's decision construing a contract presents an issue of law that is subject to the *de novo* standard of review." Tropical Glass & Constr. Co. v. Gitlin, 13 So. 3d 156, 158 (Fla. 3d DCA 2009). A settlement agreement is contractual in nature and therefore interpreted and governed by contract law. See Muñoz Hnos, S.A. v. Editorial Televisa Int'l, S.A., 121 So. 3d 100, 103 (Fla. 3d DCA 2013). We therefore review de novo the trial court's order interpreting the Settlement Agreement. See Pinnacle Three Corp. v. EVS Invs., Inc., 193 So. 3d 973, 975-76 (Fla. 3d DCA 2016) ("In the present case, we review the trial court's ruling de novo, as it depends on the interpretation of paragraph 7 of the settlement agreement."); see also Commercial Capital Res., LLC v. Giovannetti, 955 So. 2d 1151, 1153 (Fla. 3d DCA 2007) (applying de novo standard of review to trial court's order enforcing settlement agreement).

III.   ANALYSIS

When a trial court approves a settlement agreement by order and retains jurisdiction to enforce its terms, the trial court has the jurisdiction to enforce the terms of the settlement agreement. See Paulucci v. Gen. Dynamics Corp., 842 So. 2d 797, 803 (Fla. 2003); Sarhan v. H & H Inv'rs, Inc., 88 So. 3d 219, 220 (Fla. 3d DCA 2011). It is well-established, however, that "the extent of the court's

6

continuing jurisdiction to enforce the terms of the settlement agreement is circumscribed by the terms of that agreement." Paulucci, 842 So. 2d at 803; see also Sarhan, 88 So. 3d at 220; Olen Props. Corp. v. Wren, 109 So. 3d 263, 265 (Fla. 4th DCA 2013); Rocha v. Mendonca, 35 So. 3d 973, 976 (Fla. 3d DCA 2010); W.C. Riviera Partners, LC. v. W.C.R.P., LC., 912 So. 2d 587, 589 (Fla. 2d DCA 2005). For that reason, a trial court exceeds the jurisdiction it reserved for itself when it grants to a party seeking enforcement relief that is beyond the obligations set forth in the parties' settlement agreement. See Pinnacle Three Corp., 193 So. 3d at 976 (stating that trial court properly concluded that relief sought in motion to enforce settlement agreement went beyond obligations detailed in settlement agreement and was thus beyond the jurisdiction retained by the trial court); Sarhan, 88 So. 3d at 220 (finding that trial court exceeded the jurisdiction it reserved for itself when it summarily entered a final judgment of foreclosure and that remedy was not authorized in stipulation of settlement).

A settlement agreement is governed by contract law. See Muñoz, 121 So. 3d at 103; see also Spiegel v. H. Allen Holmes, Inc., 834 So. 2d 295, 297 (Fla. 4th DCA 2002) (stating that settlement agreements "are interpreted and governed by the law of contracts"). A trial court is not free to re-write the terms of a settlement agreement, and "[w]here the contractual language is clear and unambiguous, 'courts may not indulge in construction or modification and the express terms of

7

the settlement agreement control.'" Commercial Capital Res., LLC, 955 So. 2d at 1153 (quoting Sec. Ins. Co. of Hartford v. Puig, 728 So. 2d 292, 294 (Fla. 3d DCA 1999)).  "An order enforcing a settlement agreement must conform with the terms of the agreement and may not impose terms that were not included in the agreement." Johnson v. Bezner, 910 So. 2d 398, 401 (Fla. 4th DCA 2005).

Here, the trial court retained jurisdiction "to enforce the terms of the confidential settlement agreement executed between the parties dated September 5, 2016."  The express terms of the parties' Settlement Agreement, therefore, delineate the trial court's enforcement power.  See Paulucci, 842 So. 2d at 803. Under the clear terms of the Settlement Agreement, the Non-Disparagement Provision applies to any written or verbal statements made *after* the agreement was executed—September 5, 2014.  The online article at issue was posted in January of 2014, well before the parties entered into the Settlement Agreement, and the record evidence establishes that Concierge knew about the January 2014 online article at the time it entered into the Settlement Agreement.  The Settlement Agreement only required the retraction of the January 27 blog post, and did not address the January 2014 online article in any way or otherwise require its retraction or removal.  Had Concierge wanted the Appellants to remove the January 2014 online article from their websites, Concierge could have negotiated that term into the Settlement Agreement.  Concierge did not do so.

8

Under the guise of enforcing the Settlement Agreement, the trial court impermissibly re-wrote the Settlement Agreement. Specifically, the trial court construed the Settlement Agreement's express language limiting the Non-Disparagement Provision to statements made <u>after</u> September 5, 2014, to apply to the January 2014 online article—an article published before September 5, 2014, and one that the parties knew about prior to entering into the Settlement Agreement but which they chose not to include within its terms. <u>Cf.</u> <u>Rocha</u>, 35 So. 3d at 976 (reversing trial court's order enforcing settlement agreement and finding that "[a]lthough a trial court may be motivated to do what it considers to be fair and equitable, it retains no jurisdiction to rewrite the terms of a . . . settlement agreement. Under the guise of enforcing the agreement, the trial court here impermissibly modified it."). Accordingly, we find that the trial court's order requiring the removal of the January 2014 online article exceeded the jurisdiction the trial court reserved for itself to enforce the terms of the Settlement Agreement.

IV. <u>CONCLUSION</u>

Because the Settlement Agreement did not require the Appellants to remove the January 2014 online article from their websites and the January 2014 online article was not a statement made after the date of execution of the Settlement Agreement, the trial court impermissibly exceeded its jurisdiction in finding the Appellants in violation of the Settlement Agreement. The order on appeal

9

enforcing the Settlement Agreement and ordering the removal of the January 2014 online article is therefore reversed.

Reversed.